

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# Khan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Khan v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1212.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1212

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1762

MOHAMMAD SHABIR KHAN,
Petitioner

v.

ALBERTO GONZALES,[*] Attorney General
of the United States,
Respondent

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
Agency No. A76-506-061

Submitted Under Third Circuit LAR 34.1(a)
April 7, 2005

Before: BARRY, AMBRO, and GREENBERG, Circuit Judges

(Opinion Filed:May 11, 2005)

OPINION

---

[*]Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R. App. P. 43(c).

BARRY, <u>Circuit Judge</u>

Mohammad Shabir Khan, a native and citizen of Pakistan, petitions this Court for review of a final order of removal from the Board of Immigration Appeals ("BIA"). We have jurisdiction under 8 U.S.C. § 1252(a), and will deny the petition.

**I.**

Khan arrived in the U.S. Virgin Islands on or around October 8, 2000, without valid entry documents. A Notice to Appear was issued by the then-Immigration and Naturalization Service on March 27, 2001.[1] On October 11, 2001, Khan filed an I-589 Form requesting asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). At a pre-merits hearing, he conceded removability.[2]

The Immigration Judge ("IJ") denied all of Khan's applications for relief and ordered him returned to Pakistan. Khan appealed to the BIA, which affirmed without opinion. This timely petition followed.

**II.**

Because we write only for the parties, we limit our factual discussion to those events relevant to the instant disposition. According to Khan, he left Pakistan on December 28, 1999 and went to Dubai, where he stayed for four months. After he left

---

[1]The Department of Homeland Security now oversees the enforcement of U.S. immigration laws. <u>See</u> 6 U.S.C. § 271 (2002).

[2]The first two pre-merits hearings took place in the Virgin Islands, although the second was conducted, over the phone, by the Immigration Judge from her chambers in San Juan, PR. The case was then transferred to Newark, New Jersey, for all further proceedings.

Dubai, he went to Cuba for two weeks, and from there to Panama and, finally, to St. Thomas in the U.S. Virgin Islands. Soon after Khan arrived in St. Thomas, he attempted to board a flight to Miami, Florida, and was apprehended. When apprehended, he had in his possession a fraudulent visa and misrepresented his status to the authorities. He subsequently pled guilty to a violation of 18 U.S.C. § 1546(a) and was sentenced to time served.

In his I-589, Khan claimed that his membership in the United Kashmir People's National Party ("UKNP") caused him to be persecuted because, in his words, "the party . . . wants the freedom of Kashmere (*sic*), and the government of . . . Kashmere (*sic*) is [a] Muslim government." See A.128. Khan, who had traveled in and out of Pakistan at least three times between 1996 and 1999, claims that he fled the country in December of 1999 because he believed the police were going to arrest him after he gave a speech at a political meeting that advocated Kashmiri independence.[3] He stated in his I-589 that he will be "arrested indefinitely, tortured, or killed" if he is returned to Pakistan. Id. at 200.

**III.**

Under any of the avenues of relief Khan is pursuing, he bears the burden of proof.

---

[3]Khan added that he had also been targeted by the police for his political activities in June of 1996, although he had difficulty explaining the incident that gave rise to the police's interest in him. He claimed to have been beaten three times with sticks after the police detained him, but did not require medical treatment. Later, in July of 1998, he was allegedly targeted again after apparently giving a speech on a "nuclear experiment" or "blast" at an outdoor assembly. He testified that he was detained for two days.

See Wu v. Ashcroft, 393 F.3d 418, 423 (3d Cir. 2005); Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003).[4] If the IJ makes an adverse credibility determination, and orders the applicant removed for a failure of proof, as the IJ did here, we review that decision for substantial evidence.[5] See 8 U.S.C. § 1252(b)(4)(B); Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) (explaining that an adverse credibility determination is a finding of fact, and therefore reviewable under the substantial evidence standard). In other words, the IJ's determination must be upheld "unless no reasonable person would have found the applicant incredible." Chen, 376 F.3d at 222. An IJ's adverse credibility determination must be based on "specific[,] cogent reasons," including "inconsistent statements, contradictory evidence, and inherently improbable testimony." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (internal citations omitted).

The IJ based her determination that Khan was not credible on various parts of his testimony, including instances where he contradicted himself, gave vague answers, or was

_____

[4]To be eligible for asylum, an applicant must prove that he is unable or unwilling to return to, or seek the protection of, his country of origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). Similarly, to secure a withholding of removal, an applicant must show that it is "more likely than not" that he will be subject to future persecution on one of the above-enumerated grounds. See 8 C.F.R. § 208.16(b)(2). Finally, for relief under the CAT, the applicant must show that it is more likely than not that he will be tortured if he is removed to the designated country. See Lukwago v. Ashcroft, 329 F.3d 157, 182-83 (3d Cir. 2003).

[5]When the BIA affirms without opinion, "the IJ's opinion effectively becomes the BIA's, and, accordingly, a court must review the IJ's decision." Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

4

unable to give logical responses. For example, despite the run-ins Khan claimed to have had with the police in 1996 and 1998, he rejoined UKNP activities after each incident, and presented no evidence that he suffered any repercussions for having done so. Additionally, Khan stated that the meeting he attended, which supposedly caused the police to seek his arrest and prompted his decision to flee, occurred on December 28, 1999; however, he later stated, and had earlier represented in his I-589, that he left Pakistan on December 4, 1999. His passport, we note, showed that he left the country on December 3, 1999.[6] Furthermore, Khan claimed that the Pakistani government was pursuing him, but he had been able to travel in and out of Pakistan, without incident, for several years. Based on our review of the record, we cannot say that a reasonable person, when presented with statements such as the examples given above, would find Khan credible.

Credibility aside, the IJ also found that Khan had not shown that he would be subjected to persecution or torture upon his return to Pakistan, or that he ever had been persecuted or tortured in the past. Although we do not question that there is much violence in the Kashmiri region, there is nothing in the record that supports Khan's claim that he was persecuted by Pakistani officials, see Fatin v. INS, 12 F.3d 1233, 1240 (3d

---

[6] When confronted with these inconsistencies, Khan revised his statement and testified that the meeting actually took place on December 2, 1999. See A160. He then attempted to explain away the discrepancies by stating that "I don't remember because of the pressure and I was, I am not feeling good, so this is the date my friend got." Id. This did not persuade the IJ, nor would it persuade any reasonable person.

Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"), or that he would be targeted for such persecution upon his return. This lack of proof is fatal to Khan's asylum claim, which in turn is dispositive of his claims for withholding of removal and protection under the CAT. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

For the forgoing reasons, we find that the decision of the IJ is supported by substantial evidence. We, therefore, deny the petition for review.